IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONNA R. RISTEEN,                          Civ. No. 09-6020-AA
                                           OPINION AND ORDER

            Plaintiff,

      v.

WAL-MART STORES, INC., a foreign
business corporation, individually
and dba WAL-MART

            Defendant.
_____

Sharon Stevens
Michael D. Callahan
CALLAHAN & STEVENS
5845 Shoreview Lane N, Suite 500
Keizer, Oregon 97307-0937
            Attorneys for plaintiff

David G. Hosenpud
Sharen Bolesky
LANE POWELL PC
601 SW Second Ave., Suite 2100
Portland, Oregon 97204-3158

1 - OPINION AND ORDER

Attorneys for defendant

AIKEN, Chief Judge:

Plaintiff Donna Risteen brought suit against defendant Wal-mart Stores, Inc. alleging violations of Title I of the Americans with Disabilities Act of 1990(ADA), 42 U.S.C. § 12201, and the Oregon disability discrimination statute, Or. Rev. Stat. § 659A.150.  Plaintiff claims defendant discriminated against her based on her actual disability and record of disability, failed to provide her with reasonable accommodations, and failed to participate in the interactive process.  Defendant moves for summary judgment on plaintiff's claims and moves to strike certain evidence presented by plaintiff.  On April 20, 2010 the court heard telephone oral argument.  For the foregoing reasons, defendant's motions are denied.

**BACKGROUND**

Plaintiff is an adult female with severe dyslexia who is essentially unable to read or write.  In February 2002, she applied for a cashier position at defendant's Lancaster Road store in Salem, Oregon.  Because she could not read or write, her daughter Tammy Goodwin, also a Wal-Mart employee, filled out her application form and read the job description and other written materials to her.  At the time she was hired, plaintiff did not ask for an accommodation for her dyslexia.  The parties dispute whether or not plaintiff told defendant of her dyslexia at that

2 - OPINION AND ORDER

time.

Plaintiff began working as a cashier on March 5, 2002.
Shortly thereafter, plaintiff informed defendant that she was
having difficulty reading credit card numbers and receipts.
Within weeks, she was transferred to the position of people
greeter.  In that position, plaintiff again had difficulty with
some of the job duties, such as verifying receipts of customers
leaving the store.  In July 2002, she was transferred to the
women's clothing department to work as a sales associate. In July
2003, she was transferred to the men's clothing department, where
she remained until June 19, 2007.

In February 2004, plaintiff signed an acknowledgment of the
sales associate job description which listed the position's
essential functions. Some of the essential functions included
visual recognition of labels, prices, and signs.  To meet these
requirements in light of her dyslexia, plaintiff memorized
commonly used words and phrases, such as "sale," and asked her
supervisor and coworkers to give verbal instructions when
possible or to assist her with reading.  On each of her annual
evaluations, plaintiff's supervisor Diann Wake gave her an
overall rating of "meets expectations."  Areas for improvement
noted on plaintiff's most recent evaluations included "learn[ing]
how to cut fabric and dip fish,""finish[ing] each job in a timely
manner,""spend[ing] more time in the dept.,""learn[ing] how to do

claims," and "keep[ing] the dept. cleaner."  Declaration of
Sharon Stevens (Stevens Decl.), Ex. 14, p. 1; Ex. 15, p. 1.

Beginning June 4, 2007, Wake began leaving lists of specific
duties Wake wanted plaintiff to accomplish on a particular day.
The notes were written in Wake's cursive handwriting.  Because
plaintiff had difficulty reading them, she asked another employee
to read them to her.  Plaintiff did not ask Wake to stop giving
her notes because "she didn't want to get in trouble."
Declaration of Donna Risteen (Risteen Decl.), p. 6.  But when
Wake asked plaintiff if she would prefer not to receive notes,
plaintiff responded, "what do you think, Diann?" Risteen Decl.,
p. 6., Stevens Decl., Ex. 1, p. 18.  Apparently, in the past
plaintiff had asked Wake not to leave her notes.

Also in early June 2007, plaintiff was told by store
managers that she must fill in occasionally as a cashier when the
store was busy, in addition to performing her sales associate
duties.  Plaintiff told the store managers and Wake that she was
unable to cashier because of her dyslexia.  Plaintiff was advised
by Cindy Russ, store co-manager, to bring in a doctor's note
verifying her disability.

On June 10, 2007, plaintiff provided a medical release form
so that defendant could contact her doctor, Richard Eikren, M.D.,
regarding her dyslexia.  At the same time, she completed a
written request for reasonable accommodation to be relieved of

4 - OPINION AND ORDER

cashier duties and to receive no written instructions.  Defendant
denied plaintiff's request.  Plaintiff appealed the denial and
took a 30-day leave of absence beginning June 19.  Prior to her
30-day leave, store manager Alex Frolov told plaintiff she was
qualified for the position of cart/courtesy associate in light of
her requested accommodations.  This position had a lower hourly
wage than the sales associate position and offered fewer hours.

On July 2, 2007, defendant denied plaintiff's appeal in a
letter signed by Deidre Davis, Director of ADA Services.  Davis
stated that plaintiff was "either not a qualified individual with
a disability as defined by the ADA" or that her "request was
unreasonable."  Stevens Decl., Ex. 25, p. 1.

On July 21, Mr. Frolov sent plaintiff a letter directing her
to return to work by July 30, or face termination.  Frolov advised
plaintiff that she needed to "take the position that meets your
criteria per our conversation."  Stevens Decl., Ex. 27, p. 1.
Plaintiff returned to work on July 30.  She was asked to sign the
job description for the cart/courtesy associate position.  She
refused and was officially terminated on August 3, 2007.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The materiality of a fact is determined by the substantive law on the issue.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  T.W. Elec., 809 F.2d at 630.

DISCUSSION

Plaintiff brought several claims against defendant under the ADA and state disability law including disability discrimination, failure to provide reasonable accommodation, failure to engage in

the interactive process, harassment, and punitive damages.[1]
Plaintiff concedes that she cannot prevail on her claims of
harassment, discrimination based on being "regarded as" having a
disability, and punitive damages.  Defendant moves for summary
judgment on the remaining claims.[2]

## A.  Disability discrimination

Defendant argues that plaintiff fails to establish a prima
facie case for disability discrimination.  To establish a prima
facie case under Title I of the ADA, plaintiff must show that: 1)
she is disabled within the meaning of the ADA; 2) she is able to
perform the essential functions of the job with or without
reasonable accommodation; and 3) she suffered an adverse
employment decision because of her disability.  42 U.S.C. §§
12112(a),(b)(5)(A), 12111(8); Nunes v. Wal-Mart Stores, Inc., 164
F.3d 1243, 1246 (9th Cir. 1999).  The standard for establishing a
prima facie case of disability discrimination under Oregon law is
identical.  Snead v. Metropolitan Property & Cas. Ins. Co., 237
F.3d 1080, 1087 (9th Cir. 2001).

In addition, the burden shifting analysis set forth in

---

[1]In her response to defendant's motion, plaintiff also
raises a claim of retaliation.  However, because that claim was
not asserted in plaintiff's complaint, I do not address it.

[2]Defendant also moves to strike declarations presented by
plaintiff, but because I do not consider the challenged
statements in my analysis, the motion is moot.

McDonnell Douglas Corp. v. Green, 411 F.3d 792, 802-805 (1973),
applies to both federal and state claims.  Once plaintiff
establishes a prima facie case, the burden shifts to defendant to
provide a non-discriminatory reason for the adverse employment
action.  If defendant does so, plaintiff bears the burden of
showing defendant's reason was pretext for discrimination.  To
survive summary judgment, plaintiff must raise a material
question of fact that defendant's proffered reason was
pretextual.

    1.  Actual or record of disability

    To satisfy the first step in her prima facie case for either
claim, plaintiff must show that she is actually disabled, or has
a record of being disabled, according to the ADA and Oregon law.
Nunes, 164 F.3d at 1246.  Defendant argues that plaintiff is not
disabled within the meaning of the ADA, because she has not
raised a genuine issue of material fact that her dyslexia is a
"physical or mental impairment" that "substantially limits one or
more major life activities."  42 U.S.C. § 12102(2); 29 C.F.R. §
1630.2(g)(1).

    The Ninth Circuit has recognized dyslexia and other learning
disabilities as qualifying impairments under the ADA.  See Vinson
v. Thomas, 288 F.3d 1145, 1152 (9th Cir. 2002); Wong v. Regents
of Univ. of Calif., 410 F.3d 1052, 1069 (9th Cir. 2005).  The
Ninth Circuit has also held that reading is a major life

8 - OPINION AND ORDER

activity. <u>Head v. Glacier Nw., Inc.</u>, 413 F.3d 1053, 1061
(9th Cir. 2005). Further, plaintiff presents evidence sufficient
to show that genuine issues of fact exist as to whether she has
severe dyslexia and whether her dyslexia substantially limits the
major life activity of reading.

To survive summary judgment, plaintiff need not provide
medical or comparative evidence to establish a genuine issue of
material fact regarding the impairment of a major life activity.
<u>Head</u>, 413 F.3d at 1058. Rather, plaintiff's testimony may
suffice to establish genuine issue of material fact. <u>Id.</u>
Plaintiff clearly surpasses this burden. Not only does plaintiff
provide her own testimony explaining that her dyslexia
substantially impairs her ability to read, but she also provides
declarations of family members, medical documentation, and a
letter from her doctor. Risteen Decl., p. 2, Declaration of
Danny Risteen, pp. 1-2, Declaration of Tammy Goodwin, p. 1,
Stevens Decl., Ex. 23, pp. 1-2; Ex. 31, p.1. This evidence
presents a genuine issue of material fact as to whether plaintiff
is disabled within the meaning of the ADA and whether plaintiff
has a record of a disability. <u>Snead</u> 237 F.3d at 1089 (9th Cir.
2001) ("physicians' notes and various letters in the record . .
. create at least a genuine issue of fact regarding a record of
[the plaintiff's] impairment.").

2. Able to perform essential functions of the job.

Defendant argues plaintiff cannot establish that she was
"otherwise qualified" to perform the essential functions of the
job with or without reasonable accommodation. See 42 U.S.C. §
12111(8). Defendant argues that because she cannot read or
write, plaintiff does not meet her burden of showing that she is
able to perform the essential functions of a sales associate.

I find that plaintiff raises genuine issue of material fact
regarding her ability to perform the essential functions of the
sales associate position with or without accommodation.  The
essential functions of a job are "the fundamental job duties of
the employment position . . . not including the marginal
functions of the position." Bates v. United Parcel Serv., Inc.,
511 F.3d 974, 988 (9th Cir. 2007). When an employer challenges a
plaintiff's claim that he or she can perform the essential
functions of the job, the employer bears the burden of production
to come forward with evidence of those essential functions. Id.
at 991.

Here, defendant presents the sales associate job description
and the essential job functions matrix form signed by plaintiff,
which indicate that visual recognition and basic reading and
writing are essential functions of the sales associate position.
While a written job description is evidence of essential job
functions, it is not conclusive. Rohr v. Salt River Project
Agri. Improvement & Power Dist., 555 F.3d 850, 864 (9th Cir.

10 - OPINION AND ORDER

2009).  An employer may not "turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description." <u>Cripe v. City of San Jose</u>, 261 F.3d 877,887 (9th Cir. 2001)  When there is a conflict in the evidence over the essential functions of a position, there is a factual dispute notwithstanding the job description an employer has prepared. <u>Id.</u> at 888-89.

In response, plaintiff presents competing evidence that she could perform the essential functions of the sales associate job, particularly with some accommodation.  Defendant accommodated plaintiff in the past when store managers transferred plaintiff from the cashier position to people greeter and then to a sales associate position when she had difficulty reading.  Plaintiff worked as a sales associate in men's clothing for four years, and in all of her written evaluations she received an overall rating of "meets expectations."  None of the comments under areas for improvement mentioned that plaintiff could not complete tasks because she could not read or write.

Further, the record shows that plaintiff was removed from her sales associate position because she could not occasionally fill in as cashier.  Defendant does not argue that filling in occasionally as cashier is an essential function of the sales associate job.  Instead, plaintiff presents evidence sufficient

to raise a genuine issue of material fact that she was otherwise qualified to perform the essential functions of the sales associate position with or without accommodation.

3.  Adverse employment action because of disability

Defendant argues that regardless of whether plaintiff can show she is disabled or qualified for the sales associate position, she does not present evidence that she experienced an adverse employment action because of her disability.

Plaintiff responds that she was offered the cart/courtesy position because defendant decided plaintiff was unable to perform the sales associate job due to her inability to read and write. Plaintiff contends that the cart/courtesy associate position was a demotion, because it paid lower wages and offered fewer hours.

The Ninth Circuit recognizes demotion as adverse employment action. See Steiner v. Showboat Operation Co., 25 F.3d 1459, 1465 (9th Cir. 1997); Bouman v. Block, 940 F.2d 1211, 1229 (9th Cir. 1991). Plaintiff's evidence is sufficient to raise genuine issue of material fact that she was demoted and ultimately terminated because she failed to accept that demotion. Further, construing all inferences in favor of plaintiff, an issue of material fact exists as to whether she was demoted and eventually terminated because of her dyslexia after defendant denied her request to be excused from cashier duties that required reading abilities.

4.   Legitimate non-discriminatory reasons and pretext

Defendant argues that even if plaintiff can establish a prima facie case for disability discrimination, she cannot show that defendant's legitimate non-discriminatory reasons for transferring her to the cart/courtesy position and subsequent termination were pretext for discrimination.  Defendant maintains that plaintiff was separated from her employment when she refused to sign the job description for cart/courtesy associate. Plaintiff responds that defendant asked her to sign the job description before she fully understood the job, an that she was demoted because of her disability.

At summary judgment, plaintiff has the burden of persuasion to demonstrate that defendant's proffered reason was not the true or complete reason for plaintiff's adverse employment action. Snead, 237 F.3d at 1903.  Plaintiff may present evidence that persuades the court that a discriminatory motive is more likely the reason for the employer's actions or show indirectly that the employer's proffered reason is unworthy of credence.  Id. at 1093-94; Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

Defendant claims that plaintiff was reassigned to the cart/courtesy position because she was not performing her job adequately and not meeting goals set forth in her annual evaluations even though defendant did not reassign plaintiff

13 - OPINION AND ORDER

until she requested an accommodation. Defendant contends that
plaintiff was terminated because she failed to accept the
cart/courtesy position after her leave of absence and refused to
sign the job description.  Defendant told plaintiff, in a letter
dated July 21, 2007 that she must sign the job description and
accept the cart/courtesy position or lose her employment with
Wal-Mart.  Defendant contends that plaintiff's refusal provided
legitimate non-discriminatory grounds for her termination.

Plaintiff argues that defendant's proffered reason for
transferring her to the cart/courtesy position and her subsequent
termination were pretext for discrimination based on her
dyslexia, given that she met defendant's expectations during the
four years she had worked as sales associate and was only removed
after she requested accommodation for her inability to read.  In
her deposition and declaration, plaintiff asserts that she
observed signs that her supervisor and the managers were trying
to remove her from the men's department.  For example, Wake began
leaving written instruction for plaintiff, despite plaintiff's
previous objections and Wake's knowledge that plaintiff had
difficulty reading.

I find that the circumstances surrounding plaintiff's
demotion from the sales associate position raise an issue of
material fact.  Plaintiff maintains that not all other sales
associates were required to fill in as cashier, and evidence on

14 - OPINION AND ORDER

record, including a declaration from plaintiff's co-worker,
supports this assertion.  Declaration of Linda Amaral, p. 2.

     Further, defendant's argument that plaintiff was not
performing adequately as a sales associate is not sufficiently
supported in the record.  Defendant argues that plaintiff had not
learned how to "cut fabric and dip fish" which was listed on her
evaluation form as an area for improvement.  However, plaintiff's
supervisor testified in deposition that these tasks were not
really requirements of the sales associate position.  She
explained, "[i]t wasn't pushed that much.  It was just something
that the store manager come (sic) up with, but it wasn't pushed
for everybody to do it."  Stevens Decl., Ex. 3, p. 20.

     In sum, plaintiff presents genuine issues of material fact
that she has an actual and record of a disability, that she is
otherwise qualified and can perform the essential functions of
the sales associate position with or without accommodation, and
that she suffered an adverse employment action because of her
disability.  The record also presents sufficient evidence to
raise a question of fact that defendant's demotion and
termination of plaintiff were motivated by discriminatory animus.
Summary judgment on the claim of disability discrimination is
denied.

**B.  Failure to Accommodate**

     Defendant next moves for summary judgment on plaintiff's

claim that defendant failed to reasonably accommodate her
disability as required by the ADA and Oregon law.  An employer
violates the ADA by "not making reasonable accommodations to the
known physical or mental limitations of an otherwise qualified
individual with a disability . . . unless [the employer] can
demonstrate that the accommodation would impose an undue hardship
on the operation of the business of the employer." 42 U.S.C. §
12112(2)(5)(A).  Failure to accommodate is also a violation of
Oregon disability law.  Or. Rev. Stat. § 659A.112.

Defendant first argues that it had no duty to accommodate
plaintiff because she was not an otherwise qualified individual
with a disability.  Because plaintiff raises genuine issues of
material fact regarding her status as an otherwise qualified
individual with a disability, defendant's first argument for
summary judgment on this claim fails.  Defendant next argues that
it did not fail to accommodate plaintiff, because it engaged in
the interactive process with plaintiff and no reasonable
accommodation for plaintiff existed in the sales associate
position.

1. Interactive Process

Defendant argues that plaintiff cannot show that it failed
to engage in the interactive process.  The EEOC regulations
implementing the ADA state that it may be necessary for an
employer "to initiate an informal, interactive process with the

qualified individual with a disability" to determine an appropriate reasonable accommodation.   29 C.F.R. § 1630.2(o)(3).

The Ninth Circuit has held that the interactive process is mandatory for an employer when a disabled employee requests an accommodation.   Zivkovic v. S. Calif. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002).   The interactive process requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) accommodation that is reasonable and effective.   Id.

Defendant argues that it initiated the interactive process with plaintiff when she requested accommodation that she not be required to cashier.   Then, according to defendant, store managers searched for a position that would be suitable for plaintiff given her limitation in reading and writing and offered plaintiff the cart/courtesy position.

However, plaintiff presents sufficient opposing evidence that defendant did not engage in an interactive process. Plaintiff argues that when she made a formal request for reasonable accommodation, i.e. to be relieved from cashier duties, defendant did not engage in direct communication with her to explore possible accommodations.   Instead, plaintiff contends that defendant told her she could take the cart/courtesy job or be terminated from Wal-mart.   Plaintiff's assertion is supported

by the letter from defendant sent to plaintiff just before she returned to work in late July 2007.

Plaintiff's evidence creates an issue of fact as to whether defendant in good faith engaged plaintiff in the interactive process as required by the ADA.

2. Accommodation

Finally, defendant argues that plaintiff cannot meet her burden of showing that an accommodation was possible for her sales associate position. Defendant argues that store managers had no way of knowing how to accommodate plaintiff's dyslexia in her position of sales associate and they were not required to speculate on an appropriate accommodation. However, evidence on the record supports plaintiff's position that she suggested possible accommodations. For example, plaintiff had discussions with her supervisor and the store managers about her request to be relieved of the duty to occasionally cashier. Further, her formal accommodation request presented defendant with two possible accommodations: no cashier duties and no written instructions from Wake. Plaintiff provides sufficient evidence that she presented defendant with possible accommodations for her dyslexia in the sales associate position, and that defendant failed to consider them. Moreover, plaintiff worked in the sales associate position for four years prior, meeting the expectations of defendant.

Accordingly, defendant's motion for summary judgment on plaintiff's claims of failure to reasonably accommodate her disability and failure to engage in the interactive process are denied.

### CONCLUSION

For the above stated reasons, defendant's motion for summary judgment (doc. 21) and motion to strike (doc. 45) are denied.

IT IS SO ORDERED.

Dated this ___30___ day of April, 2010.

_____

Ann Aiken
United State District Judge

19 - OPINION AND ORDER